UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

QSR Southern Group, LLC; QSR
Midwest Group, LLC; and QSR
Michigan-Ohio, LLC,

Case No. 2:19cv781-FtM-TPB-MRM

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

A & A Restaurant Holdings, LLC;
N &A Restaurant Holdings Group, LLC,
a/k/a N & A Restaurants; E & A
Restaurant Holdings, LLC, a/k/a E & A
Restaurants, LLC; Savannah Holding
Group, LLC, a/k/a Savannah
Restaurants, LLC; Midwest
Hospitality, LLC; Falcon Holdings,
LLC; and Aslam Khan,

Defendants.
_____

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

This is a case about the sale of restaurant franchises from one group of holding companies to another. On January 27, 2019, the Askar family, through Unified Holdings, signed Asset Purchase Agreements ("APAs") to buy the assets of 45 Church's Chicken restaurant franchises owned or controlled by Defendant Aslam Khan, through various holding companies. (Am. Compl. (Docket No 4) ¶ 21.) Before the closing date, Unified

Holdings assigned its rights, title, and interests in those Agreements to the Plaintiffs, QSR Southern Group, QSR Midwest Group, and QSR Michigan-Ohio.

On May 20, 2019, Defendant Khan's holding companies—Defendants A&A Restaurant Holdings, N&A Restaurant Holdings Group, E&A Restaurant Holdings, Savannah Holding Group, Midwest Hospitality, and Falcon Holdings ("the corporate Defendants")—sold 43 of the franchises to Plaintiffs.[1] Also at the closing, the parties executed a Closing Agreement to allow Defendants additional time to comply with various aspects of the APAs, including delivering: (a) good and marketable title, (b) assignments and consents of leases and subleases, (c) tax-clearance certificates, and (d) a closing statement. (Closing Agreement (Docket No. 4-1).)

After closing, Plaintiffs "experienced unprecedented and unexpected problems with taking over." (Am. Compl. ¶ 31.) According to Plaintiffs, Defendants materially defaulted on their agreements by overestimating budget projections, not paying for the businesses' licenses (resulting in fees and penalties), and not disclosing health-code and building-code violations. Plaintiffs further contend that Defendants continued to collect the restaurants' profits for a time after the closing. On September 16, 2019, Plaintiffs served Defendants with written notice of the material defaults, namely retaining the profits from restaurants Defendants had sold to Plaintiffs. (Demand Letters (Docket No. 4-10 to 4-13).) Plaintiffs allege that Defendants have refused to cure any of the defaults. (Am. Compl. ¶ 35.)

---

[1] Plaintiff QSR Southern called off the sale of one of the remaining franchises, and Defendant N&A refused to close on the other. (Am. Compl. ¶ 30 n.9.)

Plaintiffs bring a 15-count Amended Complaint, raising claims for breach of contract, civil theft, specific performance, and declaratory relief against the corporate Defendants, and a claim for common-law fraud against Defendant Khan. Defendants now move to dismiss all counts for failure to state a claim, or alternatively ask for a more definite statement of Plaintiffs' claims.

**DISCUSSION**

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007). But "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

### A. Civil Theft

In Counts I to III, Plaintiffs raise claims for civil theft, alleging that the corporate Defendants continued to receive all cash and credit-card sales from the restaurants for a time period after the closing, thus violating the APAs' terms. The APAs provide that Defendants were to "reimburse the Buyer for any proceeds from the post-closing credit card and cash sales that are deposited into Sellers' accounts due to any delay in the transfer to the Buyer of the credit card processing system or delay from the Buyer establishing local bank accounts for cash deposits." (Am. Compl. ¶ 38.)

To state a claim for civil theft under Florida law, Plaintiffs must allege that Defendants

> (1) knowingly (2) obtained or used, or tried to obtain or use, [Plaintiffs'] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [Plaintiffs] of [their] right to or a benefit from the property or (b) appropriate the property to [Defendants'] own use or to the use of any person not entitled to the property.

United Techs. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009). The victim of a civil theft can recover threefold the actual damages sustained. Fla. Stat. § 772.11. But before a claimant can sue, it must "make a written demand for . . . the treble damage amount of the person liable for damages under this section." Id.

Defendants contend that Plaintiffs failed to plead viable claims for civil theft because the Amended Complaint does not meet the heightened pleading requirements for civil theft, such as describing each Defendant's felonious intent. Plaintiffs allege that Defendants unlawfully retained the proceeds from restaurants that Defendants no longer owned and took no action in response to demand letters. For purposes of this Motion, these allegations

4

are sufficient to plead felonious intent. Gordon v. Omni Equities, Inc., 605 So. 2d 538, 541 (Fla. Dist. Ct. App. 1992) (allegation of felonious intent was sufficient because it included willful representations with the intent of unlawfully depriving another of property and a violation of Florida law).

Defendants' argument that because Plaintiffs allege breach of contract, they cannot also plead civil theft is similarly unavailing. Plaintiffs may bring claims for both civil theft and breach of contract, as long as the civil-theft claims "go beyond" failure to comply with a contract. Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008). Plaintiffs' assertion that Defendants not only failed to comply with the APAs' terms but also that Defendants stole Plaintiffs' profits exceeds that which is required for a breach-of-contract claim.

Defendants further argue that they cannot answer the civil-theft allegations without more specific pleadings as to what amount each Defendant owes each respective Plaintiff. In the Amended Complaint, as in the demand letters, Plaintiffs list the amount owed to each Plaintiff, rather than the amount that each Defendant owes. That is not fatal to the civil-theft claims. The Court takes as true Plaintiffs' well-pleaded allegations that Defendants controlled the restaurants' profits at the time the demand letters were written (Am. Compl. ¶ 38-40); therefore, Plaintiffs reasonably had limited information as to each Defendant's responsibility for the actual sale amounts.

Defendants point to the civil-theft statute's demand requirement and argue that Plaintiffs did not comply with this requirement, and because of that, Defendants cannot answer the allegation. But "the demand requirement in the statute is not substantive because

it does not relate to the activities that give rise to the cause of action itself. It exists to encourage negotiation and settlement prior to the commencement of litigation." Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1145 (M.D. Fla. 2018) (citation and quotation omitted). Thus, "courts within this circuit have enforced the demand requirement leniently and have declined to dismiss nonconforming claims." Id. Defendants' Motion is denied as to these Counts.

### B. Specific Performance

In each of the specific-performance claims, Counts IV-VIII, Plaintiffs seek to enforce the APAs, the APAs' First Amendment, and Closing Agreement, which require the corporate Defendants to turn over various documents and information related to the franchises' operations. Plaintiffs bring the claims pursuant to the APAs' Section 10.1 ("Effect of Termination"), which allows Plaintiffs "to commence a suit for specific performance if Seller does not comply with its obligations." (APAs (Docket No. 4-1 to 4-3).) Plaintiffs argue that without such documents and information, they are incapable of operating the businesses, and these Counts seek to compel Defendants to provide the required documents.

Defendants' sole argument as to why the specific-performance claims fail is that they are mislabeled and should be labeled as breach-of-contract claims. Under Florida law, however, a specific-performance claim may proceed unless "the terms thereof do not meet the required certainty to be specifically enforced." Bay Club, Inc. v. Brickell Bay Club, Inc., 293 So. 2d 137, 138 (Fla. Dist. Ct. App. 1974). That is not the case here.

6

Moreover, forcing Plaintiffs to replead their specific-performance claims as breach-of-contract claims, as Defendants suggest, would be futile because Plaintiffs do not have an adequate remedy available at law under the agreements to satisfy the substance of the claims. See Degirmenci v. Sapphire-Fort Lauderdale, LLLP, 693 F. Supp. 2d 1325, 1347 (S.D. Fla. 2010). Plaintiffs seek fulfillment of Defendants' contractual obligations, and money damages would not afford Plaintiffs the relief they seek. Defendants' challenges to the specific-performance claims fail.

### C. Breach of Contract

Counts IX to XII plead that the corporate Defendants breached the APAs, the APAs' First Amendment, and the Closing Agreement in a myriad of ways. To establish a breach-of-contract claim, Plaintiffs must prove three elements: "(1) a valid contract, (2) a material breach, and (3) damages." Ferguson Enters. v. Astro Air Conditioning & Heating, Inc., 137 So. 3d 613, 615 (Fla. Dist. Ct. App. 2014).

There is no dispute that the parties entered into valid contracts. Plaintiffs allege that Defendants breached the APAs by failing to provide documents, such as lease information, proration figures for rent and taxes, good and marketable titles, and tax-clearance certificates. (Am. Compl. ¶ 32.) Plaintiffs further claim that Defendants did not provide accurate budget information, the pay-off amount for a bank loan, and information regarding leases or tail obligations as the contracts required. (Id.) And Plaintiffs allege that Defendants' failure to provide these documents caused Plaintiffs to suffer damages. (Id. ¶¶ 93, 97, 100, 103, 106.) These allegations state a claim for breach of contract with regard to what the APAs required Defendants to give Plaintiffs.

7

Plaintiffs next claim that Defendants did not disclose restaurant operating conditions, such as health-code and building-code violations. (Id. ¶ 33.) Plaintiffs additionally claim that Defendants did not pay for up-to-date business licenses, resulting in fees for Plaintiffs. (Id.) This violated the APAs. Again, Plaintiffs have sufficiently plead that Defendants breached the contractual provisions regarding the franchises' operations.

Plaintiffs further allege that Defendants breached their agreements by failing to deposit restaurant profits into Plaintiffs' accounts, instead collecting and retaining approximately $1,400,000 in sales that Plaintiffs were entitled to under the APAs. (Id. ¶ 32.) Plaintiffs also claim that Defendants did not sell them restaurant #98 within 30 days, as the Closing Agreement specified. (Id.) There can be no dispute that these failures caused Plaintiffs damage. Assuming these allegations are true, Plaintiffs raise valid breach-of-contract claims.

Finally, Defendants' argument that the Amended Complaint does not explain "which company or companies took possession of these restaurants" is faulty, because the Amended Complaint lists which Plaintiffs purchased assets from the various Defendants. (Defs.' Supp. Mem. (Docket No. 20) at 8.) In sum, Defendants have not demonstrated that Plaintiffs have failed to state a claim on which relief can be granted on their breach-of-contract claims.

**D.     Common Law Fraud**

Count XIV raises a claim for common-law fraud against Khan for "personally reaffirm[ing]" information about the franchises before and during the sale, which Plaintiffs later discovered to be untrue. (Am. Compl. ¶ 109.) Specifically, Plaintiffs allege that Khan overvalued the restaurants' profits, claimed that the businesses licenses were paid for, and

that the franchises "were in restaurant operation condition" without code violations. (Id. ¶ 108.) To state a claim for common-law fraud, plaintiffs must allege

> (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person.

Gandy v. Trans World Computer Tech. Grp., 787 So. 2d 116, 118 (Fla. Dist. Ct. App. 2001).

Khan contends that the fraud count must be dismissed for two reasons. First, he argues that the Court lacks jurisdiction over him, because he is not a citizen of Florida and Florida's long-arm statute is insufficient to convey jurisdiction.

The Court can exercise personal jurisdiction over a nonresident defendant if (1) Florida's long-arm statute, Fla. Stat. § 48.193, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process. Rowe v. Gary, Williams, Parteni and Gary, P.L.L.C., 723 F. App'x 871, 874 (11th Cir. 2018). Because Florida's long-arm statute extends the personal jurisdiction of Florida courts as far as due process allows, see e.g., Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. See Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010).

A court's assertion of personal jurisdiction over a nonresident defendant satisfies due process when the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation and citation omitted). Minimum contacts exist when "the defendant's conduct and connection with the

forum State are such that he should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). It is "essential . . . that there be some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U .S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). If a defendant has purposefully established minimum contacts with the forum state, the contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice." Id. at 476.

Here, the Amended Complaint sufficiently pleads that Khan made or "reaffirmed" material misrepresentations to Plaintiffs regarding the franchises, which would have included the Florida restaurants. (Am. Compl. ¶ 109.) The pleadings sufficiently allege that Khan committed a tort, submitting him to personal jurisdiction in Florida. Exhibit Icons, LLC v. XP Cos., LLC, 609 F. Supp. 2d 1282, 1299 (S.D. Fla. 2009). Physical presence in Florida when committing a tortious act is not required to establish personal jurisdiction. Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002); see also Calder v. Jones, 465 U.S. 783, 790 (1984) (finding that due process allowed exercise of personal jurisdiction over non-resident defendants who commit an intentional tort). The exercise of this Court's jurisdiction is appropriate, and Khan's lack-of-jurisdiction argument falls flat.

Second, Khan contests that Plaintiffs failed to plead the fraud claim with the requisite specificity. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs allege that Khan misrepresented information about licenses, profits, and code compliance, and that he intended Plaintiffs to rely on that misinformation, which is sufficient for a fraud claim. Defendant's Motion is denied as to this Count.

### E. Declaratory Relief

Count XV seeks resolution of Plaintiffs' obligations under the APAs, the APAs' First Amendment, and the Closing Agreement. For instance, this Count asks for a declaration regarding Plaintiffs' obligations to pay funds to Defendants when Defendants have not offered any of the documentation required for Plaintiff to determine what funds are due. (Am. Compl. ¶¶ 120-23.) "The only relevant inquiry in a motion to dismiss a declaratory-judgment action is whether or not the plaintiff is entitled to a declaration of rights." Bleau Fontaine Condo. Ass'n No. Three, Inc. v. Indian Harbor Ins. Co., No. 18cv22995, 2019 WL 1932785, at *2 (S.D. Fla. Jan. 10, 2019). If a plaintiff may obtain relief through other claims already before the court, a declaratory judgment is unnecessary. Id.

Defendants argue that this declaratory-relief claim is "no[t] useful" because no actual controversy exists. (Defs.' Supp. Mem. at 16.) This bald assertion does not consider the fact that the Court must construe the facts in the Amended Complaint as true. Alternatively, Defendants suggest that they may file a counterclaim, but Defendants' proposed counterclaim is irrelevant to a determination of whether Plaintiffs have stated a claim on

which relief can be granted.  Defendants' challenge fails, and the Motion is denied as to the tail obligations and retained liabilities aspects of the declaratory-judgment claim.

However, Plaintiffs' contention that a declaratory judgment is warranted as to rent, real-estate taxes, and personal-property taxes is duplicative of the breach-of-contract claims and is therefore dismissed.  (See APAs § 2.3.2; APAs' First Amendment (Docket No. 4-4) at 2.)  Thus, Defendants' Motion is granted as to the rights and taxes aspect of the claim.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion (Docket No. 20) is **GRANTED in part** and **DENIED in part**.

Dated:  April 9, 2020

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge